IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30431
_____

JOHN O SHILLING

                          Petitioner - Appellant

          v.

BURL CAIN, Acting Warden, Louisiana State Penitentiary
STATE OF LOUISIANA

                          Respondents - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(CA-94-3253-F)

_____

March 11, 1996

Before KING, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

     John Shilling appeals the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

     After a jury trial in Louisiana state court, John Shilling and

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Herman Billiot were found guilty of the murder of James Stache. The Louisiana Supreme Court recounted the facts of the case as follows:

> Through the testimony of two female eyewitnesses, it was proven that Billiot, Shilling and another unidentified male were out on the town visiting various Gretna and Marrero, Louisiana, nightspots. Late in the evening they met with Pamela LeBlanc at one of these nightspots and still later met with Stephanie (Penny) Plaisance at another nightspot. This group went to yet another bar where Ms. LeBlanc met the victim, James Stache. After they had all consumed some unknown quantity of beer, the party of six left in Shilling's automobile traveling towards Lafitte, Louisiana. The unidentified male passed out in the car and remained unconscious for the remainder of the night. On the way to Lafitte, in the early pre-dawn hours, Shilling stopped his automobile twice, presumably so he and others could answer the call of nature. The first place he stopped was too well lit and there were too many people nearby watching another car on fire. Shilling then drove down the road a little further and stopped a second time. Billiot, Shilling and the victim, with the help of the defendants got out of the car and walked about ten (10) feet from the side of the vehicle. Billiot and Shilling then began to beat and kick the victim, both pulling knives to cut and stab him. The defendants beat the victim senseless and robbed him of $30.00. Billiot and Shilling then returned to the others and drove away to Shilling's residence in Lafitte, leaving the victim for dead on the side of the road. Soon after arriving at his residence, Shilling and Billiot left the two women and returned to the scene of the initial attack to find Shilling's lost knife. When they arrived, they found the missing knife and the victim, still alive, trying to hitchhike.
> 	The defendants put the victim into their automobile and drove a little further down the road to a more secluded spot. They dragged the victim from the back seat out to the edge of a bayou; each of them punching the victim in the throat, Billiot first, then Shilling, whereupon Shilling then slit the victim's throat with his knife; pushed his head under water and stood on him until the victim eventually drowned. The defendants returned to Shilling's residence, to pick up the two women and take them home, telling them how they had finished off the victim. Shilling also threatened the women with death if they told anyone about the killing.

State v. Shilling, 440 So. 2d 110, 111-12 (La. 1983) (quoting State

<u>v. Billiot</u>, 421 So. 2d 864, 866 (La. 1982)).

After Shilling was found guilty of first degree murder, he was "sentenced to life imprisonment without benefit of parole probation or suspension of sentence,"[2] **and the conviction and sentence were affirmed on direct appeal. <u>Id.</u> Shilling exhausted his state habeas remedies. <u>State ex rel. Shilling v. Whitley</u>, 637 So. 2d 459 (La.), <u>clarification granted</u>, 642 So. 2d 183 (La. 1994).**

**On November 2, 1994, Shilling filed a federal habeas corpus petition under 28 U.S.C. § 2254. He filed a memorandum and exhibits in support of that petition. At the order of the magistrate judge, the state filed a memorandum in opposition to the petition. The magistrate judge issued his report and recommendation that Shilling's petition be denied. Shilling objected to this recommendation. The district court adopted the magistrate judge's report and recommendation. Shilling filed a notice of appeal and a motion for a certificate of probable cause, which the district court denied. On appeal, we granted Shilling's motion for a certificate of probable cause.**

## II. STANDARD OF REVIEW

In reviewing the habeas proceedings of a prisoner in state custody, we generally must accord a presumption of correctness to state court findings of fact. <u>Mann v. Scott</u>, 41 F.3d 968, 973 (5th Cir. 1994) (citing 28 U.S.C. § 2254(d)), <u>cert. denied</u>, 115 S. Ct. 1977 (1995). We review the district court's findings of fact for

---

[2] **"Billiot was convicted of second degree murder and sentenced to life imprisonment." <u>Shilling</u>, 440 So. 2d at 111 n.1.**

clear error and decide conclusions of law de novo.  Id.

### III. DISCUSSION

Shilling raises five issues in the instant federal habeas corpus petition:  (1) whether the instruction to the jury on the law of principals was constitutionally infirm; (2) whether Shilling was denied a fair trial because all potential jurors unwilling to impose the death penalty were excluded from the jury; (3) whether the jury instruction on reasonable doubt was constitutionally infirm; (4) whether the prosecution suppressed exculpatory evidence and knowingly used perjured testimony; and (5) whether the prosecution failed to disclose an agreement with the prosecution witness.  We address these issues seriatim.

### A. The Jury Instruction on the Law of Principals

Shilling argues that he was denied due process in violation of the Fourteenth Amendment because the trial court failed to properly instruct the jury on specific intent.  Shilling was charged with first-degree murder.  To be convicted of such a crime, an individual must have the requisite mental state--the specific intent to kill or do great bodily harm.  State v. Shilling, 440 So. 2d at 112 (citing La. Rev. Stat. 14:30(1)).  According to Shilling, the court's instruction on the law of principals relieved the State from proving beyond a reasonable doubt that he had the specific intent to kill.

To support his argument, Shilling relies on State v. West, 568 So. 2d 1019 (La. 1990), and on a habeas-corpus action brought by a Louisiana state prisoner, Flowers v. Blackburn, 779 F.2d 1115 (5th Cir.), cert. denied, 475 U.S. 1132 (1986).  In West's case, West

4

testified that an acquaintance kidnapped two people and later murdered them in front of him. The jury charge stated in part, "All persons, knowing the unlawful intent of the person committing the crime . . . are principals and are equal offenders and are subject to the same punishment." West was convicted of first-degree murder. The jury charge in West was found to be erroneous because it might have led the jury to believe that specific intent could be implied from the mere fact that the defendant knew of his co-perpetrators' intent. 568 So. 2d at 1024. Similarly, in Flowers, where the defendant claimed that a confederate had raped and killed the victim, we held that the jury instructions on the law of principals--identical to those given in West--could have allowed the jury to find the defendant guilty of first-degree murder without finding that he had a specific intent to kill, as required by Louisiana law. 779 F.2d at 1121.

The instructions on the law of principals given by the trial court in this case were virtually the same as those found to be constitutionally deficient in West and Flowers:

> All persons knowing the unlawful intent of the person committing the crime, who were present, consenting thereto, and aiding and abetting either by furnishing the weapons of attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety or the concealment of the offender, are principals and equal offenders and subject to the same punishment.

As in West and Flowers, the instruction lacks an explicit explanation that the jury must find that each individual had the specific intent to kill. Although the trial court noted that the jury must find every element of the crime for each defendant in

5

order to convict, we have held that such a general instruction is not sufficient to cure erroneous instruction on the law of principals. Flowers, 779 F.2d at 1122-23 ("The charge read as a whole does not alleviate the error.").

However, federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous. Estelle v. McGuire, 502 U.S. 62, 72 (1991). It must be established that the particular charge at issue violated some constitutional right when viewed in the context of the trial record and the jury instructions as a whole. Id. The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (citation omitted). Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis. See Rose v. Clark, 478 U.S. 570, 576-80 (1986). Thus, even if the instruction was erroneous, where the error is harmless, habeas-corpus relief is not warranted. See Brecht v. Abrahamson, 113 S. Ct. 1710, 1721-22 (1993). In a habeas proceeding, a constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." Id. (internal quotation marks and citation omitted).

We conclude that the erroneous jury instruction in this case did not have a substantial and injurious effect on the verdict. Prosecution witnesses testified at trial that Shilling slit the victim's throat and then held the victim's head under water to ensure his death. "At trial neither Billiot or Shilling testified. Shilling relied on the testimony of two witnesses to establish an

6

alibi for his whereabouts on the night of the murder." State v. Shilling, 440 So. 2d at 114. In view of the trial record and in light of the fact that the jury found Shilling guilty of first degree murder and his codefendant, Billiot, guilty of second degree murder, it is unreasonable to believe that the jury convicted Shilling on the basis of Billiot's intent and not his own.[3] **The deficiency in the jury charge on the law of principals was harmless error.**

**B. Exclusion of Jurors Unwilling to Impose the Death Penalty**

Shilling complains that he was denied an impartial jury because six potential jurors were excused for cause based on their

---

[3]  **The jury was instructed that:**

**[I]n order to convict the defendant of first degree murder you must find:**
**1.   that the defendants killed James H. Stache; and**

**2.   that the defendants acted with the specific intent to kill or to inflict great bodily         harm; and**
**3.   that the defendants were engaged in the perpetration or attempted perpetration of an         armed robbery.**
**. . .**

**[I]n order to convict the defendant of second degree murder, you must find:**
**1.   that the defendant killed the victim; and**
**2.   that the defendant acted with the specific intent to kill or to inflict great bodily         harm**
                **OR**
**1.   that the defendant killed the victim whether         or not he had an intent to kill; or to   inflict great bodily harm.**
                  **AND**
**2.   that the killing took place while the defendant was engaged in the commission or attempted commission of an armed robbery or         simple robbery, [aggravated rape, aggravated         burglary, aggravated kidnapping, or         aggravated escape].**

7

unwillingness to impose the death penalty. He supports his argument by citing Grigsby v. Mabry, 637 F.2d 525, 529 (8th Cir. 1980) (remanding habeas petition for evidentiary hearing to determine whether exclusion of jurors unable to consider imposing death penalty subjected defendant to jury biased in favor of the prosecution). As raised by Shilling, "[t]his theory has repeatedly been rejected by this Court and has been held not to justify our granting of a certificate of probable cause." Rault v. State, 772 F.2d 117, 133 (5th Cir. 1985), cert. denied, 476 U.S. 1178 (1986).

The trial court's decision to exclude a juror because of the juror's views on capital punishment is entitled to the presumption of correctness accorded under § 2254(d). Wainwright v. Witt, 469 U.S. 412, 429 (1985). "[T]he decisive question is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Mann, 41 F.3d at 980 (internal quotation marks and citation omitted). The Constitution does not prohibit the exclusion of a venire member for cause when it is clear that he or she cannot faithfully render a verdict according to the evidence. Id. at 981; see also Adams v. Texas, 448 U.S. 38, 45 (1980) (noting that the State may insist jurors conscientiously apply the law as charged by the court).

In this case, the trial court took care not to automatically exclude potential jurors who verbalized reservations about the death penalty. Nine potential jurors in all expressed a reluctance to impose the death penalty. After questioning each of these potential jurors, the trial judge refused to dismiss three of them.

8

Shilling concedes that each of the six excused potential jurors indicated that he or she could not impose the death penalty in any case. Thus, Shilling's claim fails because the views of those six potential jurors would "distort [their] ability to uphold the law." Mann, 41 F.3d at 981. This claim does not warrant habeas relief.

**C. The Jury Instruction on Reasonable Doubt**

Shilling argues that the trial court erroneously instructed the jury on the issue of reasonable doubt. He contends that the trial judge did not inform the jury, as required by State v. Mack, 403 So. 2d 8, 11 (La. 1981), that they could form a reasonable doubt from the lack of evidence in the case.[4] As support for his contention, Shilling points to a statement made to potential jurors prior to voir dire.

In reviewing this issue, the magistrate judge found as a fact that the trial court issued the following instructions:

> The defendants are presumed to be innocent until each element of the crime necessary to constitute [their] guilt is proven beyond a reasonable doubt. The defendant is not required to prove that he is innocent. Thus, each defendant begins the trial with a clean slate.
>
> The burden is upon the State to prove each defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give each defendant the benefit of every reasonable doubt arising out of the evidence or <u>out of the lack of evidence</u>. If you are not convinced of the guilt of each defendant beyond a reasonable doubt, you must find him not guilty.

(emphasis added). As the record shows, the trial court did instruct the jury they could find a reasonable doubt from the lack

_____

[4] **Mack** requires that a trial judge include the exact language of article 804 of the Louisiana Code of Criminal Procedure in his instructions to the jury on reasonable doubt. Mack, 403 So. 2d at 11.

9

of evidence.  The language cited is virtually identical to the language of article 804 of the Louisiana Code of Criminal Procedure.  We conclude that Shilling's contention regarding the reasonable doubt instruction has no merit.

### D. Suppression of Exculpatory Evidence

Shilling asserts that the state suppressed exculpatory and impeachment evidence in the form of a police report.  The Brady doctrine requires that the prosecution disclose evidence favorable to the defense.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  However, it does not mandate that the prosecution allow complete discovery of its files as a routine practice.  United States v. Agurs, 427 U.S. 97, 109-10 (1976).  A prosecutor's failure to disclose information amounts to a constitutional violation only where the nondisclosure deprives the defendant of a fair trial.  Id. at 108.

To prevail on his Brady claim, Shilling must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to his defense, and (3) the evidence was material.  East v. Scott, 55 F.3d 996, 1002 (5th Cir. 1995).  "Undisclosed evidence is material if `there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'  A reasonable probability is `a probability that is sufficient to undermine confidence in the outcome.'"  Id. (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).

Shilling asserts that LeBlanc's trial testimony was inconsistent with information contained in the police report.  The testimony that LeBlanc gave regarding which barroom she was in at

10

different points in the evening was at times inconsistent with the information she had given in the police report. LeBlanc testified at trial that she was not drunk at the time of the commission of the crime, but in the police report she indicated that she was drunk. Additionally, Shilling contends that the police report indicated that prosecution witness Plaisance was angry and afraid of him because she believed that Shilling had stolen $350 from her common-law husband.

Shilling further asserts that the prosecution should have disclosed a missing persons report which noted that the victim was last seen alive at 10:00 p.m. on February 23, 1981, because LeBlanc and Plaisance testified that the murder occurred on February 20, 1981. At trial, Dr. Alvaro Hunt, a pathologist, testified that the victim died between 9:00 a.m. on February 23 and 9:00 a.m. on February 26. The missing persons report and the pathologist's testimony suggest that LeBlanc and Plaisance testified to an incorrect date for the murder.

The district court found that the inconsistencies between the police report and the trial testimony were not material. The testimony of prosecution witness Plaisance was virtually unshakable despite rigorous cross-examination. Moreover, the state reinforced the testimony of LeBlanc and Plaisance by linking Shilling to the crime through the presentation of physical evidence, such as blood stains on the rear seat of Shilling's car, evidence of damage to the exterior of the car--supporting testimony that the victim's head was smashed against the vehicle, and photos of a wound to Shilling's hand. We conclude, as the district court did, that any

11

inconsistencies which could have been brought out during cross-examination of LeBlanc though the use of the contested suppressed evidence would have been insufficient to alter the jury's verdict.

Shilling also argues that the prosecution knowingly utilized perjured testimony because the prosecutor was aware of inconsistencies between the police report and the trial testimony. A different standard of materiality applies to a charge of knowing use of perjured testimony than applies to a Brady claim. Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993). "[I]f the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous: the conviction `must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict. . . .'" Id. (quoting Bagley, 473 U.S. at 679 n.9). We find that Shilling has failed to meet even this less onerous standard. Moreover, there is no evidence that the prosecution knowingly used perjured testimony.

We conclude that Shilling's claims that the prosecution suppressed evidence and knowingly used perjured testimony do not warrant habeas relief.

**E. Failure to Disclose Agreement with Prosecution Witness**

Shilling asserts that the state failed to disclose an agreement that it had with key prosecution witness LeBlanc. He argues that disclosure of this agreement would have allowed the defense to show witness bias. To support his contention of an agreement, Shilling has produced two handwritten documents purported to be letters from LeBlanc.

The supposed agreement addressed minor charges for public drunkenness, resisting arrest, refusing to move on, and simple battery. These arrests were all put before the jury, and on cross examination, LeBlanc admitted that she was to be tried on a charge of prostitution. She specifically denied that she had made any agreement with the prosecution. The state denies that any deal was made with LeBlanc and supports this assertion with an affidavit from Patrick Leitz, the Assistant District Attorney who prosecuted Shilling's case. The two handwritten documents have not been authenticated in any manner, and the district court found them to be insufficient to show that LeBlanc's testimony was obtained through an agreement with the state.

Shilling has produced no evidence to support his contention that there was a secret agreement to secure LeBlanc's testimony against him. We conclude that the claim that Shilling was denied due process because the prosecution failed to disclose an agreement with a key prosecution witness is meritless.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

13